Case number 16-1316 et al. King Soopers et al Petitioner v. National Labor Relations Board. Mr. Deany for the petitioner, Ms. Ginn for the respondent. Thank you. Good morning and may it please the court. I'm Ray Deany and with me at council table is my associate, Jonathan Watson. Your honors, the matter in this case involves King Soopers' petition to vacate the NLRB's findings, conclusions, and remedies and his failure to defer to the party's grievance and arbitration process in accordance with proper formulations of what's referred to as the Collier Insulated Wire Deferral Doctrine. King Soopers as well seeks review of the NLRB's orders in this case that it violated sections 8A1 and 3 of the National Labor Relations Act and therefore charging party in this case, Ms. Giesland, was entitled to an enhanced remedy to redress these violations. The NLRB has cross-petitioned for enforcement of all of these orders. This issue about Collier deferral has had a boundless and sometimes unrestrained history through the NLRB and certainly in this circuit court. It started out being characterized by the Honorable Judge Edwards as confusion at the NLRB about the scope of Collier deferral. Doesn't it typically require a settlement? I'm sorry, Judge Griffith. Doesn't it typically require a settlement before we start using it? No, I don't think so, Your Honor. I think it requires a resolution. But I couldn't find any case in which the charging – in which you have the union backing out and the charging party wanting to go ahead and the employee wanting to go ahead. Yeah. Are there any cases like that? I think there are several. In fact, one of them that Judge Edwards also dealt with in the plumbers and pipe fitters, local 520 case, where the union told the grievant in that case that they were not going to proceed to arbitration. The local union and the grievant proceeded to the NLRB. The administrative law judge proceeded to hear the 8A1 and 8A3 allegations in spite of the Collier rule that is set forth in alpha beta. And the board, fortunately in that situation, reversed it and said that issue about not taking the matter to arbitration is not part and parcel of a proper analysis of alpha beta or the Collier deferral doctrine. What we're talking – The facts here, we have the union backing out, but the employee wanted to continue, right? Oh, yes. Not unusual. We have the general dynamics case where the union also backed out. But you're saying based on that that there was a resolution that ran contrary to the employee's interest that we should defer to? And, in fact, it is so filled with due process for that employee's protection and rights because it includes a step in the grievance and arbitration process beyond the employer's involvement. It provides an avenue for the employee to address directly with the union's executive committee, which is what happened here, why it should proceed to arbitration. And the administrative law judge in this case said, well, they never told her, we're speculating about why they didn't proceed to arbitration. That's just frankly not true. It obviously evinces evidence that they have not scoured the record because Ms. Giesland testified in her hearing that the executive committee told her that she was not protected in complaining about her lunch break or her contract limitations, and that's why they were not proceeding to arbitration. She had a hearing separate and apart from the party's grievance and arbitration, but it's incorporated in a step in our grievance and arbitration process. And, Judge Griffith, this is exactly what I think the United, excuse me, it's actually what Judge Edwards has been asking since the American Freight decision in this court. We need to have a logical deferral policy in the NLRB. Why should that policy be when the employee wants to go forward, but the union doesn't? Because the employee is represented by the union. The parties to the collective bargaining agreement in the name of labor dispute resolution have agreed that that is the vehicle for redress of grievances. And there's no right under alpha-beta to insist that I have a hearing before an impartial arbitrator. The parties can resolve that as I do. Well, that's right, but if you don't get it, does that cut your right off to bring an action here? That's the question. Yes, absolutely. Why should that? Because the policy. I can easily imagine instances where the union's interest would not necessarily align with the employee's. If that's the case, Judge Griffith, that's exactly why the Supreme Court has Vaca v. Sipes. If there has been a breach of duty of fair representation by the union, but it's not a matter of being aligned with the employer, there's no evidence of that. This union, we have a very robust grievance process in our system. We arbitrate over 30 to 40 cases a year. There is nothing in cahoots here. They made an honest determination that she was in violation of the collective bargaining agreement. And according to Judge Edwards, and I think it's absolutely right, at that point the NLRB's involvement ends. Which case did not involve a settlement agreement? There's no settlement agreement in this case, right? Several. General dynamics. No, in our case, the one in front of us today. Well, I think American Freight. No, I'm sorry. Sorry. They didn't reach any settlement in the King Soopers case in front of us. Oh, no. They notified the employer. Yes. We are not proceeding with her case. That's a resolution. I'm asking you whether there was a settlement agreement. The answer is no, right? No, there is not. Okay. And in the two cases that you cited by Judge Edwards, plumbers and also the titanium case, which I guess you weren't talking about. Yes. Which you said was a precondition. Both of those involve settlement agreements. Tell me again which one didn't involve a settlement agreement. So they involve a settlement that the union wouldn't agree to in plumbers and pipe fitters. But the grievance body did, Judge Garland, the panel did agree that was reasonable. And the NLRB proceeded with their unfair labor practice proceedings anyway. Which case are you talking about? That is the plumbers and pipe fitters case. As I'm reading it, it sounds like there was a settlement agreement in that case. Yes. They reduced a termination to a suspension. It was a settlement agreement. Those are the words of the court. Right. There was no settlement agreement in this case. That is absolutely true. And there's no requirement under Alpha Beta. Which case does not involve a settlement agreement? Which case? Board cases. Let's begin with our own cases, the D.C. Circuit. Which cases did not involve a settlement agreement? So the one most directly on point is the American Freight Systems case. And then, Your Honor, I'm relying on board law where they have said settlement is not necessary. It's a resolution. Which case was that? Which board case are you talking about? General Dynamics. Okay. And, Your Honor, that really is the remedy is really not the issue about Collier deferral. The issue is have the statutory and contractual issues merged. And they do in this situation. They are exactly the same facts, the exact same evidence. And they are devoted to the parties having a fair process under Alpha Beta to vet that issue and decide whether there is a contract issue violation or not. If they decide there is not, the NLRB should step out of the picture. That is the whole point of Collier deferral. And if, Judge Garland, if the concern is that, well, that wasn't appropriate, then the board should have gone to an extra measure and conducted what's called a Spielberg analysis. Can I ask you about General Dynamics? My notes show that in General Dynamics the charging party itself pulled out. And so that's different than this case. Well, it's distinction without a difference, I would say, Judge Griffith. Help me understand that. So the union tells them there isn't going to be any money in this. He says, well, I think I'll try a different forum then and see if I can get some money, basically what Ms. Gieselin is doing in our case. That is not the purpose of grievance and arbitration. And, you know, this is a very important thing to preserve in labor law. We have a fair process, and it's designed to address wrongs. Those things that are waivable get full vetting through our grievance and arbitration process. There's no guarantee of a remedy or a settlement. They adjudicate the merits of the claim, and they did in this case. And they told her, you were wrong to do what you did. We're not going to proceed and try and recover any money for you. And there's no requirement under the Collier Doctrine or any of its iterations before the board or the courts that there be a, quote, monetary remedy of anything, or a settlement for that matter. They made their good faith efforts, and if Ms. Gieselin didn't like that and she thought there was perversion or corruption within the system, that's what we have Vaca v. Sipes for, and that is not an issue in this case. She did not pursue that. So, you know, I said that we started this with confusion. And I think Judge Edwards aptly described it as evolving to recalcitrance, with the board continually superimposing new requirements under the Collier standard. And, in fact, Judge Edwards, in the Plumbers and Pipefares case, issued the strongest admonition I have ever seen, that we are getting impatient with the board doing this. And we, with this recalcitrance towards this Collier Doctrine, we will be in a position of reversing cases on less significant cases than the one presented in Plumbers and Pipefitters. Why do you think American Freight is on point? Well, I think it's completely dispositive, Your Honor. It was actually a committee of unions. Yes, absolutely. But a union and employer reps. Is it the same thing that happened here? Well, I think, as I said earlier, Your Honor, I think our system is even better than that, because we do have the committees in Step 1, 2, Steps 1, 2, and 3, and then the employee has a right to appeal directly to the executive board of the union to understand why it is. I think it's actually advanced in my estimation. And so when they made that decision, the contract issue and the statutory issue were synonymous. There was no difference. And they said, we're not proceeding to arbitration. That's the end of the story. And I think Your Honor has pointed out absolutely accurately, NLRB, step back. You have no more role in this process. But the recalcitrance continues. They continue to issue these complaints. And so let me just say that as far as the enforceability of the board's order in this case, Judge Edwards asked for an analysis of what I said, alpha beta. I have my time up. If I can finish this thought. I'm reserving two minutes. But if I could just finish this thought. He asked for there to be an assessment of alpha beta and USPS. And he gave specific citations to that case. What the board, the ALJ, because the board never reviewed Collier. They simply said we're rubber stamping the findings of the ALJ. The ALJ didn't even review alpha beta or USPS. She reviewed a motion for summary judgment that the board took up at the time and remanded because they said there were fact issues. That is not a change in direction on Collier. Thank you, Your Honors. And I will reserve time. Can you just hold for one second? Does anybody have any other questions? Do you want to ask? Yeah. Please. The expanded remedy issue is a pretty important issue here. And you haven't even addressed that. I agree. I think the Supreme Court has decided this. And you had decided that the case that was on review, the Southwest Healthcare and Southwest Ambulance case. And, you know, this idea of enhanced remedy was Leif Solomon's idea. And this complaint, and you all have decided that that violated the law, that appointment. It was a temporary appointment. I want to talk about the merits of the argument, not about the appointment. I'm sorry. Talk about the merits of the argument, not about the appointment. Yes. But my defense to the enhanced remedy is it's not the bog of logamakie that keeps referring in the case law. This is a punitive measure. It is a compensatory measure. There is no board authority for doing so. But especially when the Leif Solomon was told that he is not sitting. Let me just say again, that issue is not before us now. The appointment of Leif Solomon is not before us. No, no, I agree. Please address only the question of whether the remedy is legal or not. And I say that it is not because the enhanced remedy is nothing more than a windfall. It's not a make-all remedy. And the whole point of it was to redress, according to the board, to deter employers. That's punitive damages. That's the express finding of the board. And that's punitive damages. Furthermore, Judge Garland, when there was a subpoena, when they tried to amend this complaint to add this enhanced remedy, we issued a subpoena. They opposed it and said, no, we're not going to have any hearing evidence on that because we have the right to promulgate this rule. And they said, and this is a perfect case for having this rule because they have wrought havoc on this woman's livelihood. That is punitive damage language. That is not authorized by this statute. So for all those reasons, that remedy is unenforceable. Roberts. A member of Missoumara dissent goes through four different examples. Yes. The fourth example is the windfall you're talking about, right? Yes. The third example is one he says might be acceptable. Do you think that the third example violates the statute or just is bad policy? The only argument I saw you make with respect to number three is it's bad policy, could lead to gaming the system, et cetera. Right. Am I right about that? I think you're right. All right. So as to the fourth, which you think violates the statute itself, we don't know in this case whether the fourth would apply here or not, right? We won't know until the compliance proceeding. Well, right. And I think that's right, Your Honor. But the issue that we are trying to address is it's the entitlement to those damages, not what the calculation is. Well, if the calculation doesn't fall into Category 4, we don't have a Category 4 problem. So my question is, what is wrong with waiting until the compliance proceeding to determine whether it's a Category 4? That is, if 1 through 3 do not themselves violate the statute but may have policy arguments, which we'll – we have to resolve. But assume for the moment we resolve the policy arguments against you. Is there anything wrong, unlawful, inappropriate beyond our power to put off the question of whether the windfall example is lawful unless we have a windfall example in front of us? There's nothing wrong with it, Your Honor, but I'd suggest that if the first premise of my argument is the complaint is dismissed and, therefore, the request for remedy is a moot point. You mean under Alpha, Beta, et cetera? Yes. Yeah, I understand that. Yeah. But otherwise not? That's correct. Okay. Sorry, Your Honor, for taking the time. No reason to be sorry. We asked you questions. We'll hear from the other side. Good morning. Amy Ginn for the Labor Board. I will start with talking about the remedy because that's where we left off. In terms of the remedy here, this is not an enhanced remedy. This is a change to how search for work and interim employment expenses are calculated. Discriminatees have been entitled to that type of May coal relief since 1938. In terms of how it is awarded, the Board has changed here how they will be calculated and that there's no cap based on a discriminatee's interim earnings. Why not cut off the search for work expenses at a windfall? What the Board here said is that they want to treat search for work expenses like every other type of May coal relief. So, for example, if and – There are other windfalls. I get that. But why create yet another one when you have a chance to fix it? I mean, that would resolve the question, wouldn't it? It's not punitive in that case if there's no windfall? It's certainly not punitive in that case, in any case but the, quote, Category 4 case.  I'm sorry to interrupt, but are you acknowledging that the Category 4 case is, in fact, punitive? If you can find – No. No, I'm not acknowledging that that category is punitive, just that there's no question as to any other category. No issue has been raised as to any other category. I see. In terms of this idea, though, that an employee could go out and make significantly more money from a new job than from the job that they were unlawfully fired from, in that instance, but it took them some expenditures to get that new job making this additional money. And that's the situation that seems to be causing concern here. In that type of situation, with other types of makeover reliefs, such as health insurance benefits, if an employee goes out and gets another job where they're making significantly more money, so there's no back pay wages due to them, for example, but they have to buy their own health insurance, they still get reimbursed by the employer for the health insurance benefits that are part of their makeover relief. And in this way, search-for-work expenses are treated the same as health insurance benefits or any other type of makeover relief. And that is one of the main reasons that the Board cited here for wanting to change the way these expenses are calculated, to comport with other types of makeover relief. You're not accepting the premise that this is a windfall in Category 4, is that right? That's correct. You think there are different categories of injury, one of which is the expenses, and they're just getting their expenses back. Is that right? Right. I'm sorry. There are different categories of injury that have occurred here, and in order to make them whole from those injuries, from that category, is to give the amount of money of the expenses, the costs of looking for work. Right, what they have lost out on. Now, what about the possibility of waiting to find out whether this is a Category 4 issue or not? I take it that the Board thinks that this is a relatively unlikely hypothetical. Is that right? I mean, the Board hasn't taken a specific position on the likelihood, but that's true. I mean, the Board stated in its decision, even if this type of situation were to arise, the Board still felt that making this type of makeover relief consistent with other types was an important purpose under the Act. Is there any problem with our waiting until there's a compliance proceeding, such that we may not have to decide this question? No, Your Honor, there's not. In this case, there is a remedy now as a matter of law in the Board's order. Objection has been taken to that remedy, and the Board, of course, has tried to state why that remedy is enforceable by this Court. But, of course, we do not know any specific expenses yet for Ms. Giesland, and that will be determined in compliance. Could you say a lot now about the Collier and Alpha Beta issue? Sure. And why is this different from cases like American Freight? Well, in this case, there's no mutual resolution whatsoever of this issue. There's nothing mutual about any – there's no settlement. There's no informal agreement between the union and King Soopers over this issue. It's simply that the union – Where did we ever say there has to be a mutual resolution as distinguished from an agreed grievance arbitration procedure that the parties faithfully follow? That's a mutual resolution. In other words, you have a – you sign a contract, you say if there's a dispute, this is the way we're going to proceed with it. And we all agree. And the union can faithfully say, I don't think so. And in this process, it goes up, and she could appeal it within that process. And if there's a breach of duty of fair representation, that's the way you clean it out if there is one. I'm not getting it. Your Honor, here the judge applied Collier and applied the United States Postal Service case, which is the exact situation that we have here, where the union refused to process the employee's grievance to arbitration. There's no evidence the refusal was unlawful or motivated to avoid deferral. Again, there's no evidence of that here. We do not know the reason that the union withdrew the grievance and declined to take it to arbitration. We know that Giesland pursued everything she could to have the union take it, but we don't know why they did not. And there's no distinction here with the USPS case where the board said that the company did not meet its burden for deferral. And the board analyzed USPS? I missed it. Yes, that's correct. The judge explicitly relied on USPS in this case. There's some analysis in the weighing? I mean, it's part of a – I mean, the line of cases we're talking about, I guess you can cut the line closely. The line of cases we're talking about is if the parties have a grievance arbitration procedure available, you should leave the parties. And this is clearly – there's no distinction between the ULP and the contractual dispute, none. They may be coterminates in the sense that you can find some substantive – Sure. All right, but they're essentially the same. The point of these decisions is why is the board fooling around in this area when the parties have agreed to a procedure and no one has breached the procedure? The employee has no right to go to arbitration. The employee has a right to present it to the union representative for consideration. And if you follow that procedure, why isn't that enough? And, Your Honor, see, that's part of the problem that the board found here is that Geislin herself has no right to arbitration. She has no way to pursue this when her union has chosen not to. She has a right to union representation. That's correct. Right. But she also had her rights violated under the – her statutory rights violated. And she is attempting to seek redress for that violation. The arbitrator ruled otherwise. Do you think the board really would have overturned it? If an arbitrator had heard it – No, Your Honor. I mean, that's the whole point. So to say her legal rights were violated doesn't really say anything. We're really talking about contractual claims. And so the question is why doesn't the board leave the parties to their contractual remedies? There's no overriding unfair labor practice issue here, as there can be in some cases. The only claim here is a contractual claim, which can be read as a ULP, but the cases – there are cases that say when you're in that situation, let the parties use their own devices, which may include, no, we're not taking this. Why? Because we see no merit. Why is that a bad thing? We see no merit. Here, Your Honor, the union didn't say that they saw no merit. They said that they wouldn't take the grievance to arbitration, but they did not say why. They did not say it was not their choice. So you're saying the distinction here is the union didn't put on the record, we see no merit to this case? I'm saying we don't know in this case, and the board – If the union had clearly said, we see no merit, they had written that down in the process, then you would see that as different.  I'm trying to understand your theory of the case. You're defending the board. Tell me what your theory is. The judge here specifically relied on the fact that there was nothing in the record to say why the union didn't take the grievance. And you're embracing that. That's the board's position, that you're stating on behalf of the board. If the union doesn't say, we see no merit to it, that's dispositive, and that distinguishes the cases that we're talking about. That's not the only factor that's dispositive, Your Honor. Tell me what else the board says. Sure. So the reliance here was on the U.S. Postal Service case, again, where the union refused to process the employee's grievance to arbitration. There was no evidence there, nor is there evidence here, that the union's refusal was unlawful or motivated to avoid deferral. And that's the same situation here. Is that reasoning that's helpful? I mean, I'm not – I don't get it. There was no evidence that the union did anything unlawful. So the only thing you're missing then is the union has to say, incidentally, we didn't do anything unlawful, and we found no merit. So if they had said, and we found no merit, then we're okay. Again, I can't say, Your Honor, what the judge would have said in – or what the judge or the board would have said in that situation. But here there is reliance on the fact that the union refused to go to arbitration. We don't know why. And that Giesland had exhausted all of the procedures available to her, and she could not – And she had an internal appeal with the union, right? She did. Okay. There's nothing to indicate that there was anything wrong with that. And that internal appeal, by its terms, no one's doubting, it's an assessment of the merits of the employee's claim. That's what it's there for, right? Right. There is a hearing and discussion of – there's an opportunity for questions and a discussion of the claim. So we know why the union didn't go, because they didn't think there was any merit. Which answers your question. I would still say that's speculative, that we don't know. We know that the union heard certain things about her claim, and there were questions. We don't know everything that was discussed, and we certainly don't know the specifics of their reason. I mean, I understand the lines, and I can understand if maybe your concern was the union says, well, you know, maybe there's something here. We don't have the money for arbitration now. And so they're essentially saying, try it with the board. As distinguished from the union is saying, we've let you take it all the way through, and we're not buying it. We don't think you have a case here, and we're not – we're making a merits determination. We're not going to pursue it. Now, the company has certainly given its answer on the merits, and the union doesn't disagree with that answer on the merits as best I can see. Well, you're saying that isn't there. That isn't there. So that's really your only answer to me. That's the only way you can dispose of these other cases, right? Well, in terms of some of the other cases, I mean, there were mutual resolutions. Let me just ask you one thing, because I – Sure. I'm sorry to interrupt. I don't remember the answer to the question. Did the board say – either the board or the ALJ that they're affirming – they say that's what bothers us. The union hasn't said they found no merit. The judge did say – The U.S. Postal is kind of garbage the way it's written. So I'm asking you more than – don't just say U.S. Postal. I know where you're about to go. Don't go there, okay? Okay. All right. We're together. So now tell me, did the board say – our concern here is the union did not ever say they were declining to go because they saw no merit. The judge said the union executive committee does not share the reasons behind its decision, and the record only contains speculation as to why the union declined to arbitrate her grievance. I think that's the clearest answer. Okay. You've been very patient with me. Thank you. And you with me. Thank you. I think – so in terms of discussing then the remedy and the deferral issue, I would just say in terms of the violations found, we do rest on our brief. If there are questions as to any of the analysis, I'd be happy to answer those questions. Is there anything special about the language of the collective bargaining agreement here on the question of whether all ULPs have to go through arbitration for the grievance process? Not that I'm aware of, Your Honor, and no argument was made to that effect, that the grievance and arbitration article in this particular contract had something – Different than others. Different, right, or unusual. Okay, further questions? No. Okay, thank you. Thank you very much. We'll give you another minute. Thank you, Your Honor. Judge Edwards, let me just point out, I think I probably said it in haste, but Ms. Giesland testified, and it's in the appendix at 143. She testified that in direct answer to a question, what did the executive board tell you as to why they were dismissing your grievance? Answer, again, because I should have went to sack the groceries without asking about my lunch or my contractual rights, that I should have waited until I sacked the groceries and then filed the grievance. So she fully knew. There's no speculation, which the ALJ said, that's her term, speculative. It's not speculative at all. And the board did not analyze any of this. They have no reasoned opinion before this court about why they did it. Why did they do that? Because they said the primary issue in this appeal is the remedy. They never scoured this record the way they should for this court's review, and this court has so held on many occasions. The final thing I would say is this reference to the USPS, I think I pointed this out, but that citation in the ALJ's decision is to a summary judgment decision that was remanded. It did not decide the merits of that case. It's a summary judgment decision about whether it should be. Are you talking about postal service? Yes, the one that the ALJ cited to, Your Honor. And it's not the one that you directed the board to take into account, the 300 NLRB number 29. It's 324 NLRB number 129 in 1997, and it's a summary judgment motion that is remanded to the board. It's not a board decision. Thank you. It does say that a precondition of collier deferral is that the charging party have the ability to obtain arbitral consideration of the grievance. And I think that's the importation of a requirement that has never existed in collier deferral and exactly why Judge Edwards has said in the plumbers and pipe fitters case, stop the recalcitrance, stop adding elements to this formula. Thank you. All right, we'll take the matter under submission, and we'll hear the next case.
judges: Garland, Griffith, Edwards